IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD ANTHONY JENKINS,                          Case No. 2:25-cv-00295-SB

       Plaintiff,                                   **OPINION AND ORDER**

   v.

WARREN ROBERTS *et al.*,

       Defendants.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Plaintiff Richard Anthony Jenkins ("Jenkins"), a self-represented litigant in custody at

Columbia River Correctional Institution, filed this civil rights action pursuant to 42 U.S.C. §

1983 ("Section 1983") alleging claims arising under the Eighth and Fourteenth Amendments, the

Americans with Disabilities Act ("ADA"), and the Health Insurance Portability and

Accountability Act ("HIPAA"). Before the Court is Defendants' Motion to Dismiss (ECF No.

12) and Defendant Warren Roberts' joinder therein (ECF No. 13).

      For the reasons explained below, the Court GRANTS the motion to dismiss and

dismisses Jenkins' complaint with leave to amend.

PAGE 1 – OPINION AND ORDER

**BACKGROUND**

Jenkins names as defendants seven current or former Oregon Department of Corrections ("ODOC") employees: (1) Dr. Warren Roberts ("Dr. Roberts"), formerly ODOC's Chief Medical Director; (2) Joe Bugher ("Bugher"), formerly ODOC's Assistant Medical Director; (3) Dr. Benjamin Smith ("Dr. Smith"), a medical provider at the Oregon State Penitentiary ("OSP"); (4) Barker, the Two Rivers Correctional Institution's ("TRCI") Food Services General Manager; (5) Kay Thompson ("Thompson"), TRCI's ADA Coordinator; (6) D. Hunter ("Hunter"), TRCI's Inmate Work Programs Coordinator; and (7) B. Jones ("Jones"), TRCI's Food Services Coordinator (together, "Defendants"). (Compl. (ECF No. 2) at 2-3.) Jenkins alleges that "Defendants acted in a systematic nature" over the course of several years to violate his rights. (*Id.* at 4.)

In Claim 1, Jenkins alleges that from May 2021 to August 2021, he suffered severe back pain for which he was prescribed physical therapy. (*Id.* at 5.) Jenkins alleges that he informed Dr. Smith of his continuing pain by filing "many complaints of sciatica nerve damage in left and right legs, pelvis pains and sharp radiating pains down both legs into feet." (*Id.*) Jenkins claims that despite his many grievances concerning the lack of treatment for his back pain, the Therapeutic Level of Care ("TLC") Committee denied his request for magnetic resonance imaging (an "MRI"), and Dr. Roberts and/or Bugher falsely accused him of not participating in physical therapy in response to his grievance appeals. (*Id.* at 5-7.)

In Claim 2, Jenkins alleges that in June 2021, a podiatrist used a screw to mend a break in his right big toe. (*Id.* at 7.) Jenkins alleges that Dr. Smith, Dr. Roberts, and Bugher, through the TLC Committee, refused to approve the procedure for nine months despite receiving many grievances detailing Jenkins' "severe pains walking, standing, . . . kneel[ing], run[ning], or exercis[ing] [while] using [his] right foot." (*Id.*) Jenkins further alleges that he experienced

residual pain after the procedure, and that the podiatrist determined in March 2023 that Jenkins'
body "was rejecting [the] hardware." (*Id.* at 8.) Jenkins claims that the TLC Committee did not
approve surgery to remove the screw until he filed a lawsuit,[1] and that he "will have life long
residual pains in right foot due to the years of denied and delayed care and treatment." (*Id.*)

In Claim 3, Jenkins alleges he "tweaked" his left knee while in custody in 2022. (Compl.
at 9.) Jenkins alleges that for two years after the injury, Dr. Smith, Dr. Roberts, and Bugher,
through the TLC Committee, denied his requests for an MRI and otherwise "downplay[ed] [his]
complaints of injuries and pains." (*Id.* at 10.) Jenkins claims that the TLC Committee "finally"
approved an MRI in April 2024, which "showed two tears in [his] left and right-side Meniscus."
(*Id.* at 11.) Jenkins alleges that he underwent orthoscopic surgery to mend the tears in December
2024. (*Id.*)

In Claim 4, Jenkins alleges that he "began documenting complaints of vision loss in both
eyes" in November 2021. (*Id.*) Jenkins alleges that despite having "clouded blurred vision
24/7[,]" he received no treatment or diagnosis and was not scheduled to see an eye specialist
until November 2022. (*Id.*) Jenkins alleges that Dr. Smith, Dr. Roberts, and Bugher, by way of
the TLC Committee, denied his requests for "eye surgery and Botox [because there was] no
indication for surgical intervention." (*Id.*)

Finally, in Claim 5, Jenkins alleges that in May 2024, a TRCI medical provider notified
Jenkins' supervisors in TRCI's food service department that Jenkins could work only four hours
per day due to a knee injury. (*Id.* at 12.) Jenkins alleges that he worked a limited schedule from
May to August 2024 without issue, but "was . . . wrongfully removed from [the] Food Service

---

[1] Jenkins states that he "filed Habeas Corpus Conditions of Confinement on or around
April or May 2024" but does not provide any additional information about where he filed, the
claims he raised, or the disposition of the case.

PAGE 3 – OPINION AND ORDER

kitchen schedule" on August 27, 2024 "without any notice or discussion[.]" (*Id.*) Jenkins states that he filed grievances and discrimination complaints against Barker, Hunter, and Thompson for refusing to accommodate his four-hour work restriction. (*Id.*) Jenkins states that he also filed grievances and complaints against Jones for discussing his work restriction in front of other individuals in custody. (*Id.*)

**LEGAL STANDARDS**

## I.     THE PRISON LITIGATION REFORM ACT

The PLRA, 28 U.S.C. § 1915A, obligates the Court to screen complaints filed by individuals in custody who "seek[] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the action if it determines that the complaint (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). Dismissal of a self-represented litigant's complaint for failure to state a claim "is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

## II.     RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Where a plaintiff's "complaint pleads facts that are 'merely consistent with' a defendant's liability, [the plaintiff's complaint] 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III.    SELF-REPRESENTED LITIGANTS

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021), and should treat "pro se litigants . . . with 'great leniency' when evaluating compliance with 'the technical rules of civil procedure.'" *Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (quoting *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986)). The Supreme Court, however, has also recognized that "[d]istrict [courts] have no obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004). Thus, there are limits on the leeway that courts must afford to self-represented litigants. *See Washington v. Kijakazi*, 72 F.4th 1029, 1039-40 (9th Cir. 2023) ("[T]here are limits to what a court must do to accommodate a party appearing pro se." (citing *Pliler*, 542 U.S. at 231)); *see also Atkins v. Montgomery*, No. 20-56007, 2024 WL 3594386, at *2 (9th Cir. July 31, 2024) (rejecting the self-represented plaintiff's arguments that the magistrate judge failed to provide "meaningful assistance" on exhaustion, or "take into account the amount of time remaining on [his] one-year statute of limitations in requiring a response to her order" (citing *Pliler*, 542 U.S. at 231)).

For example, "[a]lthough [courts] construe pro se pleadings liberally, especially in civil rights cases, [they] 'may not supply essential elements of the claim that were not . . . pled[.]'" *Owen v. City of Hemet*, No. 21-55240, 2022 WL 16945887, at *1 (9th Cir. Nov. 15, 2022) (first citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); and then quoting *Litmon v. Harris*, 768

F.3d 1237, 1241 (9th Cir. 2014)); *Salazar v. Regents of Univ. of Cal.*, 812 F. App'x 410, 412-13 (9th Cir. 2020) (same); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (observing that a court's "liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled") (simplified).

## DISCUSSION

## I.    EIGHTH AMENDMENT CLAIMS (CLAIMS 1-4)

In Claims 1-4, Jenkins alleges that Dr. Smith, Dr. Roberts, and Bugher delayed or denied constitutionally adequate medical treatment for his back, knee, foot, and eye injuries from 2021 to 2024. For the following reasons, Jenkins fails to state a timely claim on which relief may be granted.

### A.    Statute of Limitations

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a Section 1983 claim, Jenkins must allege that (1) a person acting under color of law (2) deprived him of a federal constitutional right. *See* 42 U.S.C. § 1983 (instructing that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law"); *see also Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011) (explaining that "[a]n action under section 1983 has two essential elements: (1) the defendants acted under of law, and (2) their conduct deprived [the plaintiff] of a constitutional right") (simplified).

Because Section 1983 contains no specific statute of limitations, federal courts "apply the forum state's statute of limitations for personal injury actions[.]" *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citing *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999)). In Oregon, a Section 1983 claim is subject to a two-year statute of limitations. *See* OR. REV. STAT. § 12.110 (instructing that personal injury actions "shall be commenced within two years"); *see also Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) (noting that the district court "appropriately borrowed Oregon's residual two-year statute of limitations for personal injury actions" in a Section 1983 action).

Jenkins filed his complaint on February 20, 2025, alleging claims concerning the alleged delay or denial of adequate medical care for several conditions starting in 2021. (Compl. at 4-5.) Claims 1-4 are largely based on events that occurred prior to February 20, 2023, and thus fall outside of the two-year statute of limitations. Claims 1-4 therefore are untimely.[2] *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004) (explaining that "a claim accrues [and the statute of limitations begins to run] when the plaintiff knows or has reason to know of the injury which is the basis of the action").

Jenkins nevertheless asserts that Defendants' conduct resulted in "continuous residual harm and constant continuous unnecessary wanton infliction of pain" (Compl. at 4), apparently relying on the continuing violations doctrine to render his claims timely. *See Bird v. Dep't of Hum. Srvs.*, 935 F.3d 738, 746 (9th Cir. 2019) (explaining that the continuing violations doctrine applies to Section 1983 claims and "allow[s] a plaintiff to seek relief for events outside of the limitations period") (simplified). Historically, the Ninth Circuit has "recognized two applications

---

[2] It appears that all of Claims 1 and 4 and most of Claims 2 and 3 are time-barred. To the extent Claims 2 and 3 allege facts that occurred within the limitations period, Jenkins will have an opportunity to amend to state a timely claim for relief.

of the continuing violations doctrine: first, to a series of related acts, one or more of which fall within the limitations period [("serial acts branch")], and second, to the maintenance of a discriminatory system both before and during [the limitations] period [("systematic branch")]." *Id.* (simplified).

The Supreme Court, however, drastically limited the applicability of the continuing violations doctrine in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The *Morgan* Court held that "discrete . . . acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges[,]" because "[e]ach discrete . . . act starts a new clock for filing charges alleging that act." *Id.* at 113. The Ninth Circuit has since concluded that *Morgan* rendered the serial acts branch of the continuing violations doctrine "virtually nonexistent" outside of hostile work environment claims, and has also "applied *Morgan* . . . to abrogate the systematic branch" outside of "class-wide pattern-or-practice claims[.]" *Bird*, 935 F.3d at 747-48. As a result, "little remains of the continuing violations doctrine." *Id.* at 748.

Jenkins' allegations do not fall within the limited categories of claims to which the Ninth Circuit applies the continuing violations doctrine. *See Bird*, 935 F.3d at 747 (noting that the continuing violations doctrine applies only to hostile work environment and class wide pattern-or-practice claims). Although Jenkins alleges that the Defendants' "systematic" conduct constitutes a continuing "pattern" of delaying or denying medical care, his allegations concern Defendants' conduct only with respect to his individual medical needs. *See id.* at 748 (explaining that the Ninth Circuit has "consistently refused to apply the systematic branch to rescue individualized claims that are otherwise time-barred"). The ongoing effects of Jenkins' discrete medical issues do not otherwise establish a continuing violation. *See id.* (explaining that

"continuing effect is insufficient to constitute a continuing violation"). The continuing violations doctrine therefore does not apply in this case.

For these reasons, Claims 1-4 are untimely, at least in part, and must be dismissed. Accordingly, Jenkins must amend his complaint to exclude any claims that are predicated on events and discrete conduct that occurred prior to February 20, 2023.

### B.    Failure to State a Claim

To state an Eighth Amendment claim for the denial of adequate medical care, a plaintiff must allege facts to support a reasonable inference that the defendants were deliberately indifferent to his serious medical needs. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). A prison official is deliberately indifferent "only if he knows of and disregards an excessive risk to an inmate's health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). This standard "requires more than ordinary lack of due care." *Colwell*, 763 F.3d at 1066. Indeed, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Jenkins asserts in Claims 1-4 that he did not receive medical attention or follow up care for various injuries and pain, and that Dr. Smith, Dr. Roberts, and Bugher denied or delayed specific diagnostic testing or treatment. To the extent Jenkins' allegations amount to "differences of opinion over proper medical care, inadequate medical treatment, medical malpractice, or even gross negligence[,]" those allegations do not "by themselves . . . rise to the level of . . . [a] [constitutional] violation." *Burns v. San Diego Cnty. Sheriff's Dep't*, No. 22-CV-372 JLS (MDD), 2022 WL 1570999, at *5 (S.D. Cal. May 18, 2022) (simplified). Further, Jenkins fails adequately to allege that Dr. Smith, Dr. Roberts, and Bugher, each through his own action or

inaction, was deliberately indifferent to Jenkins' serious medical needs. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (explaining that "[l]iability under [S]ection 1983 arises only upon a showing of personal participation by the defendant"); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (instructing that "[a] plaintiff must allege facts, not simply conclusions, that show an individual was personally involved in the deprivation of his civil rights"). Given these deficiencies and the untimeliness of his allegations, Jenkins fails to state a plausible Eighth Amendment claim against Dr. Smith, Dr. Roberts, or Bugher.

In addition, Jenkins' allegations in Claims 1-4 mostly detail grievances and appeals Jenkins filed concerning the medical care he received for his back, foot, knee, and eye injuries. To the extent Claims 1-4 are predicated on any individual defendant's response to or denial of those grievances and appeals, such claims, without more, are not cognizable under Section 1983. See *Todd v. Cal. Dep't of Corr. and Rehab.*, 615 F. App'x 415, 415 (9th Cir. 2015) (affirming the district court's dismissal of Section 1983 claim "regarding the processing and handling of his prison grievances because prisoners do not have a 'constitutional entitlement to a specific prison grievance procedure'"); *see also Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (affirming the district court's dismissal of Section 1983 claims against prison officials who merely denied the plaintiff's appeals); *Ellington v. Clark*, No. 1:09-cv-00054-OWW-DLB PC, 2010 WL 3001427, at *2 (E.D. Cal. July 29, 2010) (noting that simply "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation" under Section 1983) (citation omitted). Jenkins thus cannot state a viable claim for relief based solely on Dr. Smith's, Dr. Roberts', or Bugher's handling of Jenkins' grievances and appeals.

## II.    ADA, EQUAL PROTECTION, AND HIPAA CLAIMS (CLAIM 5)

In Claim 5, Jenkins alleges that he lost his job in TRCI's food service department because Barker, Hunter, and Thompson refused to accommodate his four-hour work restriction in

violation of the ADA and the Equal Protection Clause. (Compl. at 12-13.) Jenkins also alleges

that Jones discussed the work restriction with other individuals in custody in violation of

HIPAA. (*Id.* at 13-14.) For the following reasons, Jenkins fails to state a viable ADA, equal

protection, or HIPAA claim against Barker, Hunter, Thompson, or Jones.

### A.    ADA CLAIM

The ADA applies to state prisons. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209

(1998) (holding that the ADA's language "unmistakably includes State prisons and prisoners

within its coverage").

To state an ADA claim, Jenkins must plead a separate claim for relief containing facts

sufficient to support a reasonable inference that "(1) he is an individual with a disability; (2) []he

is otherwise qualified to participate in or receive the benefit of a public entity's services,

programs or activities; (3) []he was either excluded from participation in or denied the benefits of

the public entity's services, programs or activities or was otherwise discriminated against by the

public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of h[is]

disability." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (quoting *Sheehan*

*v. City & County of S.F.*, 7143 F.3d 1211, 1232 (9th Cir. 2014)). ADA claims asserted in the

prison context, however, "must be analyzed 'in light of effective prison administration.'" *Pierce*

*v. County of Orange*, 526 F.3d 1190, 1216 (9th Cir. 2008) (quoting *Gates v. Rowland*, 39 F.3d

1439, 1446 (9th Cir. 1994)). Thus, to prevail on an ADA claim alleged in the prison context, an

individual in custody "must show that the challenged prison policy or regulation is

unreasonable." *Id.* at 1217 (citing *Gates*, 39 F.3d at 1447).

///

///

///

To the extent Jenkins asserts his ADA claims against any defendant in his or her individual capacity, he fails to state a claim.[3] *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (explaining that "a plaintiff cannot bring an action under [Section] 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA"). Rather, the proper defendant in an ADA action is the public entity responsible for the alleged discrimination.[4] *See Acosta*, 2021 WL 718599, at *6 (explaining that "the proper defendant in an ADA action is the public entity responsible for the alleged discrimination" and holding that to the extent the plaintiff sought "to sue Defendants in their individual capacities under the ADA, but does not name any public entity as a party, he fails to state a claim upon which relief can be granted") (simplified).

Even if Jenkins had named a proper defendant, however, he does not allege that he has a qualifying disability under the ADA. *See* 42 U.S.C. § 12102(1)(A) (defining disability as "a physical or mental impairment that substantially limits one or more of the major life activities"). Although Jenkins alleges that a medical provider implemented a four-hour work restriction for a "knee injury," he does not allege specific facts as to the nature, severity, or duration of the knee injury. *See Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (noting that "[s]everal courts have held that temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA"); *see also Acosta*, 2021 WL 718599, at *7 (explaining that courts must consider "the nature and severity of the physical impairment; . . . the

---

[3] Although "state prison officials alleged to have acted in their official capacity on behalf of the public entity may be named as parties in an ADA Title II claim seeking injunctive relief . . . [a] [p]laintiff must allege intentional discrimination by the entity" to seek money damages. *Acosta v. Servin*, No. 20cv2225-MMA-MSB, 2021 WL 718599, at *6 (S.D. Cal. Feb. 24, 2021) (simplified). Because Jenkins requests money damages and does not appear to seek injunctive relief with respect to Claim 5, the correct defendant is the responsible public entity.

duration or expected duration of the impairment; and . . . the permanent or long-term impact of the impairment" to determine whether the impairment is substantially limiting). Furthermore, it does not appear that Jenkins was "otherwise qualified" to work in TRCI's kitchen given the eight-hour work requirement. (*See* Compl. at 13, alleging that TRCI's ADA coordinator stated in response to kyte that "Food Services requires all [adults in custody] to work 7 1/2 to 8 hours[.]") Jenkins thus fails to state an ADA claim upon which relief may be granted.

### B. EQUAL PROTECTION CLAIM

The Equal Protection Clause of the Fourteenth Amendment instructs "that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, an individual in custody must demonstrate that the defendant intentionally discriminated against him based on his membership in a protected class. *See Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001) (noting that to state a claim for a violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class"). Alternatively, an individual in custody may establish an equal protection violation by showing "that he was intentionally treated differently from other similarly situated inmates without a rational basis for such disparate treatment." *Dennison v. Waiawa Corr. Facility*, CIV. No. 16-00389 JMS/KJM, 2016 WL 4419283, at *4 (D. Haw. Aug. 16, 2016) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).

Jenkins contends that Barker, Hunter, and Thompson violated his right to equal protection by wrongfully removing him from his food services job, but he alleges no facts to suggest that those defendants acted with discriminatory intent or treated him differently than other similarly situated individuals in custody. Jenkins does not, for example, allege that Barker,

Hunter, and Thompson arranged for another individual in custody subject to a four-hour restriction to work in food service despite that individual's inability to meet the eight-hour shift requirement, nor does he plausibly allege that those defendants discriminated against him based on his membership in a protected class. Jenkins thus fails to state a cognizable equal protection claim.

### C.    HIPAA CLAIM

Jenkins references in Claim 5 grievances and complaints he filed against Jones "for violating . . . HIPPA [sic][.]" (Compl. at 13.) It is unclear whether Jenkins intends to assert a specific claim based on that alleged violation, but if so, "[a] plaintiff may only bring suit if Congress has provided a private right of action by which an individual may seek to enforce statutory provisions." *Fogel v. Dep't of Health and Hum. Servs.*, No. 1:20-cv-000762-MC, 2020 WL 2499534, at *2 (D. Or. May 13, 2020). "The ability to bring a private right of action may be authorized by the explicit statutory text or, in some instances, may be implied from the statutory text." *Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929 (9th Cir. 2010).

To the extent Jenkins attempts to assert a HIPAA claim against Jones, "[n]o express or private right of action exists under HIPAA." *Wallace v. Wash. Cnty. Jail*, No. 3:18-cv-1975-SI, 2019 WL 2583487, at *3 (D. Or. June 24, 2019). Accordingly, claims arising out of alleged HIPAA violations are not cognizable, and Jenkins fails to state a claim upon which relief may be granted against Jones.

## III.    LEAVE TO AMEND

Jenkins fails to state a viable claim for relief pursuant to Section 1983. At this stage of the proceedings, however, the Court cannot find that amendment would be futile and affords Jenkins the opportunity to amend his complaint. The Court advises Jenkins that if he chooses to file an amended complaint, he should refrain from merely recounting his grievances and appeals and

instead write a short, plain statement telling the Court: (1) the federal constitutional or statutory right Jenkins believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual did or failed to do; (4) how the individual's action or inaction caused the violation of Jenkins' constitutional rights; and (5) what specific injury Jenkins suffered because of the individual's conduct.

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 12) and DISMISSES Jenkins' complaint, with leave to amend. Jenkins must file an amended complaint, within thirty days of the date of this Order, curing the deficiencies noted above. The Court advises Jenkins that the amended complaint will operate as a complete substitute for the present complaint, not as a supplement, and that if he does not file an amended complaint within thirty days, the Court will dismiss this action.

**IT IS SO ORDERED.**

DATED this 3rd day of October, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge